**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** Plaintiff, v. **VALENTIN VALDES-AYALA,** Defendant. | **CRIM. NO. 13-853 (ADC)** |

## UNITED STATES' SUPPLEMENTAL SENTENCING MEMORANDUM

In anticipation of the resentencing hearing set for September 27, 2021, the United States of America provides the Court with additional authority supporting its request that the Court resentence Valentín Valdes-Ayala to the same imprisonment term previously imposed, 134 months.[1] In support of this request, the United States provides as follows:

On March 15, 2019, the government filed its sentencing memorandum. (ECF No. 263). The government requested that the Court find the same total offense level and impose the same sentence of 110 months on the fraud charges, which falls squarely within the current 2018[2] Guidelines' range, for two reasons. First, the evidence supports the requisite findings of facts for the guideline enhancements. Second, the sentence that was reasonable and not greater than

---

1. On November 30, 2015, the Court sentenced Valdes-Ayala to 110 months' imprisonment on the wire fraud and false statement convictions, 60 months for the bankruptcy fraud convictions, 6 months for the contempt of court conviction, and a consecutive term of 24 months on the aggravated identity count convictions, for a total term of imprisonment of 134 months. (ECF No. 220).

2. As the Court is aware, the First Circuit remanded the case "for resentencing using the proper version of the Guidelines Manual." *United States v. Valdes-Ayala*, 900 F.3d 20, 46 (1st Cir. 2018). The Court should apply the 2018 Guidelines Manual because it is the version currently in effect. *See id.* at 42; *see also United States v. Meléndez-Rivera*, 782 F.3d 26, 31 n.4 (1st Cir. 2015) ("[W]hen an appellate court vacates a sentence and remands for sentencing, the resentencing court normally is to apply the version of the guidelines in effect at the time of resentencing.").

necessary under the 2014 Guidelines, remains reasonable and not greater than necessary under current guidelines.

At the time of the filing of this memorandum, there was little caselaw on the application of the new 6-level enhancement under USSG § 2B1.1(b)(2)(C) requiring substantial financial hardship to 25 or more victims. Still, the limited caselaw supported the government's proposal that the Court treat Valdes-Ayala's victims as a group. The government cited to *United States v. Minhas*, 850 F.3d 873, 878-79 (7th Cir. 2017), and *United States v. Howder,* 748 Fed. Appx. 637, 644-45 (6th Cir. 2018) (unpublished), which affirmed that approach under similar circumstances as here. In *Minhas*, after receiving testimony from numerous victims who had fallen prey to a discount travel scheme, the district court reasonably inferred that they were all of "modest economic circumstances." 850 F.3d at 878. And in *Howder*, the defendants targeted distressed homeowners. 748 Fed. Appx. at 643-45. Two of Valdes-Ayala's groups of victims also shared similar economic positions. His debtor-clients were desperate because they faced incarceration for failing to pay their court-ordered child support and the child support beneficiaries suffered delays in collection efforts.

Since the filing of the memorandum, in *United States v. George*, 949 F.3d 1181 (9th Cir. 2020), the Ninth Circuit assessed the reasonableness of the defendant's sentence after the case had been remanded to the district court "with instructions to recalculate the total offense level and to consider recent changes to the United States Sentencing Guidelines in determining a reasonable sentence." *Id.* at 1184. In interpreting the meaning of "substantial financial hardship," on which the appeal revolved, the Ninth Circuited "conclude[d] that section 2B1.1(b)(2) requires the sentencing court to determine whether the victims suffered a loss that was significant in light of their individual financial circumstances." *Id.* The Court affirmed the application of the § 2B1.1

enhancement where the defendant targeted distressed homeowners who then paid him fees between $1,000 and $3,000. *Id.* at 1186. And while that amount might not have constituted substantial financial hardship to others, the Court recognized, it did for this group of victims. *Id.* Nor was the district court required to identify the 25 specific victims who suffered substantial financial hardship. *Id.* ("We do not agree that the district court would have been required to identify specific victims by name even if it had been asked to do so."). The Court's victim-focused inquiry, it noted, was consistent with the Seventh Circuit's approach in *Minhas*, which also rejected the notion that the district court had to "identif[y] which of the particular victims it [is] including in its calculation." *Id.* at 1186 (quoting *Minhas*, 850 F.3d at 879).

The fees paid by Valdes-Ayala's client-victims fit comfortably within the range in *George*. *See* ECF No. 244 at 56 (Valdes-Ayala admitting that he charged his clients $1575). Their financial distress has already been recognized by this Court, which heard testimony from twelve of them and from at least one family member for each of those twelve: "Certainly there were people here that had scarce economic resources and while in despair, availed of the services of Mr. Valdes," this Court found. (ECF No. 246 at 45). In fact, the Victim Impact Statement in the PSR explained that "most of Valdes' clients had no reason to even contemplate filing for bankruptcy under Chapter 13 since it had already been determined by the state court, as per the order of incarceration, that these debtors did not have the monthly disposable income necessary to pay a Chapter 13 plan." (ECF No. 299). Not only did the Court hear testimony, at trial, the Court examined 22 bankruptcy petitions pertaining to those victims and 8 others. (Exhibits 1-14, 16-23). The Court also received 50 additional bankruptcy petitions pertaining to Valdes-Ayala's client-victims that had been previously designated as evidence and produced in discovery. (ECF No. 291). While all of the bankruptcy petitions showed the client-victims' child support debt, only those filed by the

attorneys hired by Valdes-Ayala[3] in furtherance of the scheme provide the full picture the Court had the ability to witness at trial: the dire economic conditions of Valdes-Ayala's client-victims. As this table depicts, for some clients, Valdes-Ayala's fee was greater than their monthly income.

| Dkt # / | Debtor | Report of Monthly Income | Child Support debt (Schedule E) | Exhibit Page No. |
|---|---|---|---|---|
| DE 291-1/ Trial Ex. 1 | M.V.N.D. | $120.00 | $8,567.00 | 1, 5 & 26 |
| 291-1/ Trial Ex. 2 | J.O.S.N. | $125.00 | $7,099.97 | 39, 43 & 64 |
| 291-2/ Trial Ex. 13 | E.C.F. | $215.00 | $19,135.00 | 29 & 46 |
| 291-2 | J.A.O.M. | $758.00 | $18,930.89 | 74, 79 & 97 |
| 291-2 | J.E.Q.F. | $835.00 | $6,221.00 | 115, 131, 140 & 145 |
| 291-2 | A.V.B. | $1,336.11 | $6,434.54 | 154, 158 & 179 |
| 291-2 | E.V.E. | $1,200.00[4] | $6,428.00 | 192, 196, 197 & 217 |
| 291-3 | A.M.G.R. | $850.00 | $3,955.00 | 1, 5 & 26 |
| 291-3 | J.F.D.G. | $795.00 | $14,549.86 | 40, 44 & 65 |
| 291-3 | L.D.T.B. | $1,304.00 | $11,351.98 | 79, 83 & 104 |

---

3. At the sentencing hearing, Valdes-Ayala mentioned the amounts he paid attorneys for filing bankruptcy petitions, which totaled $253,663. (ECF No. 246 at 26-28).

4. EVE also received $186 in food stamps.

4

A second group of victims here shared financial distress: The minor beneficiaries who did not receive child-support because of the scheme. Valdes-Ayala's scheme diverted funds to his pocket that should have gone to the minors to help cover their basic needs. This is why "child support pensions have priority over all other debt in the Bankruptcy Court." (ECF No. 241 at 14). "Although each victim's pecuniary loss may not seem great, [Valdes-Ayala's] actions made his victims insecure in life's basic necessities—housing, electricity, water, and food. Certainly that insecurity is sufficient to raise a substantial hardship . . . ." *United States v. Castaneda-Pozo*, 877 F.3d 1249, 1253 (11th Cir. 2017) (per curiam).

In sum, the Court may reasonably infer from the existing record that in general Valdes-Ayala's victims, of which there are many hundred that we know of (ECF No. 299 at 8, 15), suffered substantial financial hardship because of his offenses—a number well above the 25 that the enhancement requires. *See Howder*, 748 Fed. Appx. at 644 (summarizing the relevant caselaw as "stand[ing] for the proposition that a sentencing court may make reasonable inferences about the victims' financial circumstances and about their level of financial harm, so long as those inferences find some support in the record"). Therefore, on this record, the Court should conclude that 25 or more of Valdes-Ayala's victims suffered substantial financial hardship.

**WHEREFORE**, the United States of America requests that the Court reimpose the original sentence at the resentencing hearing.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this September 14, 2021.

W. Stephen Muldrow
United States Attorney

/s/ Mariana E. Bauzá-Almonte
Mariana E. Bauzá-Almonte – G00309
Assistant United States Attorney
Chief, Appellate Division
United States Attorney's Office
Torre Chardón, Suite 1201
350 Carlos Chardón Ave.
San Juan, Puerto Rico 00918
Tel. (787) 766-5656

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 14, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF, which will send notification to counsel of record.

/s/ Mariana E. Bauzá-Almonte
Assistant United States Attorney
Chief, Appellate Division
